CHRISTINE A. FLYNN *vs.* CURTIS AND POPE LUMBER COM-
PANY & others.

Norfolk. December 11, 1925. — March 30, 1926.

Present: BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction,* To establish rights as equitable mortgagor, Account-
ing. *Mortgage,* Of real estate: equitable mortgage. *Damages,* In suit
in equity. *Interest. Equity Pleading and Practice,* Costs.

A corporation, which was a second mortgagee of real estate and had pur-
chased the property at a foreclosure sale of its mortgage in circum-
stances which made it an equitable mortgagee as to the title purchased
at foreclosure, without consulting the mortgagor, employed a broker,
and for convenience of management and financing procured a first
mortgage loan to take the place of an outstanding construction mort-
gage, receiving in part, instead of money paid on the new mortgage,
some other real estate, on the later sale of which it lost about $1,650.
A master in a suit in equity, in stating the accounting between the
corporation as equitable mortgagee and the mortgagor, refused to
credit the corporation with this loss. *Held,* that the refusal was right
as the mortgagor was under no obligation to pay for the corporation's
misjudgment of the value of that part of the consideration received
on the permanent mortgage which without his consent it took in the
·form of real estate.

After the foreclosure by the corporation, second mortgagee, in the cir-
cumstances above described, it refused to recognize any rights of the
mortgagor and denied any relation of confidence or trust whatever.
It appeared that, during the period between the foreclosure sale and a
subsequent sale in which the corporation conveyed the property to a
*bona fide* purchaser, the corporation made payments and advances on
account of the property and that in the accounting it claimed interest
on such advances and payments from their dates to the date of its sale
of the property. The claim was disallowed by the master. *Held,* that
the disallowance was proper as the corporation, having acted to the
disadvantage of the mortgagor, should not be awarded compensation
under the guise of interest.

In the accounting above described, the corporation claimed "compensation
for the care of the property, and general supervision of the work per-
formed on the premises." There was no evidence of assent by the
mortgagor to the performance of the services by the corporation's
representative and it appeared that, for such service as he performed,
he received no more pay than he would have received had he not per-
formed them. *Held,* that, in the circumstances in which the corporation
was in possession, the mortgagor should not be charged with the services

of the corporation's representative as, if it had not been for the corporation's fraud, the mortgagor would have been in possession caring for his own property.

The mortgagor, in the circumstances above described, was entitled to a decree awarding him the fair market value of the property, subject to the first mortgage, on the date when the corporation sold it to a *bona fide* purchaser, less proper credits to the defendant in the form of allowances and deductions, and to interest on the sum so found from the date of that sale. Following *Flynn* v. *Curtis & Pope Lumber Co.* 245 Mass. 291.

BILL IN EQUITY, filed in the Superior Court on December 8, 1919, and afterwards amended, against Curtis and Pope Lumber Company, a corporation, Myer R. Rittenberg and Morris Finkelstein, to have declared invalid a sale to one Lucey, in foreclosure of a second mortgage of the plaintiff to Curtis and Pope Lumber Company, of premises on St. Paul Street in Brookline, and a deed of Lucey to the defendants Rittenberg and Finkelstein; that the property be reconveyed to Curtis and Pope Lumber Company, who should be declared to hold it as mortgagee for the benefit of the plaintiff, and that the plaintiff be allowed to redeem the land from such second mortgage.

The suit previously was before this court upon a report by *Hammond*, J., after a hearing upon a report by a master, and the decision then rendered is reported in 245 Mass. 291. After rescript, the interlocutory decree described in the opinion was entered by order of *McLaughlin*, J., and the suit was further heard by the same master, who filed a supplemental report. Material facts found therein, and objections and exceptions by the defendant Curtis and Pope Lumber Company, are described in the opinion. The suit was further heard by *McLaughlin*, J., by whose order the final decree described in the opinion was entered. The defendant Curtis and Pope Lumber Company appealed.

*G. R. Farnum,* for the defendant Curtis and Pope Lumber Company.

*J. B. Jacobs,* for the plaintiff.

BRALEY, J. The material facts concerning the relation of the parties to the transactions as alleged in the bill as amended having been stated in *Flynn* v. *Curtis & Pope*

*Lumber Co.* 245 Mass. 291, when this case was first before us upon report, it is unnecessary to restate them, and the following decree, from which no appeal was taken, was entered after rescript:

"This cause came on to be heard at this sitting of the court upon the substitute bill of complaint and the answers thereto, and the report of the master and the exceptions to the same, and upon the rescript of the Supreme Judicial Court, and thereupon after hearing of the parties, and upon consideration thereof, it is hereby ordered, adjudged and decreed:

"1. That the plaintiff's exceptions to the master's report be, and hereby are overruled.

"2. That the master's report be, and hereby is confirmed.

"3. That the defendant Myer Rittenberg is a *bona fide* purchaser for value, without notice.

"4. That the bill of complaint be dismissed, as against the defendant, Myer Rittenberg, and the defendant Morris Finkelstein.

"5. That the defendant Curtis and Pope Lumber Company on October 15, 1919, held the property in question as equitable mortgagee of the plaintiff, to secure any indebtedness due to it from the plaintiff and Martin Flynn, her husband, including moneys expended in the completion of the garage and dwelling house.

"6. That the plaintiff is entitled to an accounting from the Curtis and Pope Lumber Company for the difference between the fair value of the equity of redemption conveyed to the defendant Rittenberg on October 16, 1919, and the amount secured by said equitable mortgage, after making all proper charges and credits.

"7. That the case be recommitted to the master to take the account from the Curtis and Pope Lumber Company of the equity of redemption conveyed to the defendant Rittenberg on October 16, 1919, and the amount secured by said equitable mortgage after making all proper charges and credits."

The case was recommitted accordingly and upon the coming in of the master's report, to which the defendant

took twelve exceptions, a final decree was entered April 21, 1925, overruling the exceptions, confirming the report, and ordering the defendant to pay the plaintiff $18,578.43, which consisted of $13,972.22, the difference between the fair value of the equity of redemption, and the.amount secured by the mortgage after making all proper charges and credits, and $4,606.21, interest at the rate of six percentum per annum from October 16, 1919, up to and including April 13, 1925. The defendant appealed.

The defendant held in the name of its nominee a second mortgage on the property which it caused to be foreclosed under circumstances which made it an equitable mortgagee. *Flynn* v. *Curtis & Pope Lumber Co., supra.* And when it became such mortgagee there was outstanding a construction mortgage for $30,000, which the company desired to replace by a permanent mortgage for a like amount. The defendant employed a broker to whom it paid a commission to negotiate a loan and through his efforts an agreement was made with the Boston Mutual Life Insurance Company whereby the defendant agreed to accept $25,000 in cash and $3,000 "in the form of equities in the three properties on Warwick Road, Newton," which had come into the hands of the Boston Mutual Life Insurance Company as the result of foreclosure proceedings or otherwise, and also permitting the insurance company to retain $2,000 as security for the completion of buildings, which was to be paid to the defendant. A mortgage was placed on the property in accordance with these terms, and the defendant completed the work and received the amount. It sold the property on Warwick Road for $1,350.72, entailing a loss of $1,649.28, with which the master charged the defendant.

It is contended under the first and second exceptions that it should have been credited with, or allowed to set off the difference between $3,000, the amount advanced in lieu of cash, and the amount received for the sale. The master finds, that the defendant did not consult the plaintiff or her husband as to the condition attached to the placing of the permanent mortgage, nor did the defendant consult the plaintiff or her husband as to the employing of Brown, the

broker. The defendant, however, held the property subject to the construction mortgage given by the plaintiff to the Beacon Investment Association. If for its own convenience of management or of financing the indebtedness it took without the plaintiff's knowledge or assent other property instead of cash when discharging the construction mortgage by means of the permanent mortgage, it should be chargeable in the account with the resulting loss. The plaintiff was under no obligation to pay for the defendant's misjudgment of the value of this part of the consideration of the permanent mortgage.

The third and fourth exceptions are to the disallowance of interest on all items representing the money paid or advanced by it from the dates of the respective payments to October 16, 1919, the date of the sale of the property by the defendant. And to the disallowance of its claim for interest on sums paid or advanced as set forth in the report between March 19, 1918, the date of the foreclosure sale under the defendant's mortgage, and October 16, 1919, the date of the sale of the property by the defendant to Rittenberg. The foreclosure sale was March 19, 1918, and the defendant during the period referred to in the exceptions denied any relation of trust and confidence whatever with the plaintiff, refused to recognize her equitable rights, and claimed to be the sole owner. It must be presumed that the defendant knew the law, and having acted to the disadvantage of the plaintiff, compensation should not be awarded under the guise of interest. *Morse* v. *Hill,* 136 Mass. 60. *Hayes* v. *Hall,* 188 Mass. 510. *Rolikatis* v. *Lovett,* 213 Mass. 545. *Flynn* v. *Curtis & Pope Lumber Co., supra.*

The fifth exception is to the disallowance of the defendant's claim for the care of the property, and for general supervision of the work performed on the premises between the date of the foreclosure under the defendant's mortgage and the date of the sale to Rittenberg. As has been said, the defendant took possession March 19, 1918, the date when it acquired title under the foreclosure of its second mortgage. Until it sold the property to Rittenberg, it collected the rents and supervised the completion of repairs on the property. The claim

before the master was, for "compensation for the care of the property and general supervision of the work performed on the premises." The master found, "The actual supervision and care fell upon one Moffette a regular employee of the defendant and it did not appear that the defendant paid him any sum for this work, apart from his regular salary as an employee. Moffette's duties were varied and covered many other matters besides the property in question in this case. He had been a trusted employee of the defendant for many years. Moffette's salary was not dependent upon this property and would have been paid by the defendant if the latter had never had to do with the plaintiff's garage property. There was no evidence indicating any assent on the part of the plaintiff or her husband to compensation for the services of Moffette in exercising general care of or supervision over the property." If it had not been for the defendant's fraud the plaintiff would have been in possession managing and caring for her own property. The case at bar is not a case where a mortgagee lawfully in possession under foreclosure proceedings makes repairs necessary for the preservation of the property which the mortgagor, if he redeems, must pay. *Barry* v. *Harlow,* 242 Mass. 159. See G. L. c. 244. The master properly disallowed the claim.

Of the remaining exceptions only the sixth, tenth and eleventh, which read as follows, have been argued.

"The defendant objects to the allowance by the master of the plaintiff's claim for interest from October 16, 1919, on the amount found by him to be a fair market value of the premises in excess of the amount due the defendant."

"The defendant objects to the finding of the master that interest should be added from October 16, 1919, on the sum of $13,972.22, the amount found due by the master.

"The defendant objects to the finding of the master that there is due from the defendant to the plaintiff interest on the sum of $13,972.22, the amount found due by the master, from October 16, 1919."

It is contended, that under the circumstances shown by the record paragraph six of the interlocutory decree should be modified in so far as to permit consideration of the posi-

tion taken by the defendant. But the decree after rescript was entered in accordance with the opinion in *Flynn* v. *Curtis & Pope Lumber Co.*, *supra*. It was the law of the case. *Arnold* v. *Maxwell*, 230 Mass. 441, 445. *Whitney* v. *Porter*, 251 Mass. 547, 550. By the sixth paragraph the plaintiff was entitled to an accounting for the difference between the fair value of the equity of redemption conveyed to Rittenberg on October 16, 1919, and the amount secured by the equitable mortgagee after making all proper charges and credits. The master consequently finds that on October 16, 1919, the date of the conversion, the fair market value of the property was $60,000, and the value of the equity of redemption was $30,000. While the defendant obtained by the sale $47,500, yet under the decree it formed no part of the accounting. The value of the equity of redemption having been determined, the master states the account of debits and credits leaving a final balance of $13,972.22 due from the defendant to the plaintiff on October 16, 1919. We find no error in the computation, and the plaintiff is entitled to interest at the rate of six percentum on the amount found due from the date of the conversion to the date of the final decree. *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway*, 187 Mass. 500, 507. *Arnold* v. *Maxwell*, 223 Mass. 47. *S. C.* 230 Mass. 441. See *Peabody* v. *New York, New Haven & Hartford Railroad*, 187 Mass. 489, 493.

The trial court having awarded costs to the plaintiff, the defendant contends that this was erroneous because no tender was made before bringing suit. But the plaintiff in her bill offers to pay the amount found to be due, and until the difference in value was ascertained by the master, under the express terms of the interlocutory decree, there was no fixed sum coming to the mortgagee on which a tender could rest. The cases of *Mills* v. *Day*, 206 Mass. 530, and *O'Brien* v. *Hovey*, 239 Mass. 37, are distinguishable, and costs were within the discretion of the court. G. L. c. 244, § 24. *Dennett* v. *Norwood Housing Association, Inc.* 241 Mass. 516, 521.

The decree is affirmed with costs of the appeal.

*Ordered accordingly.*