UNION MARKET NATIONAL BANK OF WATERTOWN *vs.* MISSAK DERDERIAN & others.

Middlesex.    May 8, 1945. — September 20, 1945.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

*Mortgage*, Of real estate: foreclosure.    *Auction.*

A finding, that a mortgagee of real estate, in conducting an auction sale in foreclosure of the mortgage, failed to use reasonable diligence to protect the interests of the mortgagor, was warranted by evidence that the published notice of the sale stated a requirement of a cash deposit of $500 "by the purchaser at the time and place of the sale . . . Other terms to be announced at the sale," and the auctioneer announced at the opening of the sale that anyone desiring to bid must first deposit $500 in cash with the auctioneer, which would be returned to the bidder at the conclusion of the sale if his bid were unsuccessful; that such later requirement was not applied by the auctioneer to the mortgagee as a bidder; that a bid was refused by the auctioneer because the bidder declined to comply with such requirement, although the mortgagee knew that the bidder was amply worth the amount of his attempted bid; and that, after alternate bids by the mortgagee and by the mortgagor, who had made the required deposit, the property was sold to the mortgagee for an amount less than its fair value and substantially less than the amount of the refused bid.

The mere fact, that a mortgagor of real estate, defendant in a suit for a deficiency alleged to be due after a sale in foreclosure of the mortgage,

attended by him with his attorney, failed to protest against the imposition by the auctioneer of a certain condition respecting bidding announced for the first time at the sale, did not as a manner of law require a finding of waiver by the mortgagor of all objections to the manner in which the sale was conducted.

BILL IN EQUITY, filed in the Superior Court on November 22, 1943.

A jury issue was tried before *Greenhalge*, J.

Certain of the plaintiff's requests for rulings, refused by the judge, were as follows: "2. I instruct you as a matter of law that the announcement by the auctioneer at the foreclosure sale that a person desiring to bid would have to make a $500 deposit before bidding does not constitute a failure on the part of the plaintiff to exercise good faith or reasonable diligence in protecting the interests of the mortgagor." "3. I instruct you as a matter of law that the requirement of the auctioneer that a person desiring to bid should make a $500 cash deposit before bidding does not constitute a failure on the part of the plaintiff to exercise good faith or reasonable diligence in protecting the interests of the mortgagor." "5. I instruct you as a matter of law that the auctioneer's acceptance of a bid from the mortgagee, in this case the plaintiff, without first requiring the plaintiff to deposit $500 in cash, does not constitute a failure on the part of the plaintiff to exercise good faith or reasonable diligence in protecting the interests of the mortgagor." "7. I instruct you as a matter of law that if you find that the defendant . . . mortgagor . . . attended the auction sale and made no request of the plaintiff or of the auctioneer that the auction sale should be postponed or adjourned, then you shall find that the defendant has waived all objections to the manner in which the auction sale was conducted, and you shall find for the plaintiff."

*R. D. Swaim*, for the plaintiff.

*G. A. McLaughlin*, for the defendants.

WILKINS, J. This is a bill in equity to establish the amount of a deficiency upon a mortgage note following a foreclosure sale and to reach and apply certain shares of capital stock and other property. G. L. (Ter. Ed.) c. 214,

§ 3 (7). The defendant Missak Derderian (hereinafter called the defendant) set up in his answer that the foreclosure sale was improperly conducted, and claimed a trial by jury. *Stockbridge* v. *Mixer*, 215 Mass. 415. To the question, "Has the plaintiff established its debt against the defendant in the amount of $2,107.72?" the jury answered, "No." The case is here on report of the correctness of the denial of the plaintiff's motion for a directed verdict and of the denial of the plaintiff's requests for instructions. G. L. (Ter. Ed.) c. 231, § 111.

On November 2, 1928, the defendant for a loan executed a promissory note in the amount of $18,000 payable in one year to the plaintiff and secured by a mortgage of real estate in Watertown.

The mortgage was in the usual statutory power of sale form. G. L. (Ter. Ed.) c. 183, §§ 8, 18, 21, and appendix. The mortgage being in default, the plaintiff duly advertised the property for foreclosure sale on the premises "at 9:00 o'clock in the morning, War Time," on June 26, 1943. At the time of the sale the mortgage covered the real estate at 208 Common Street (which was but one of the lots originally covered), and the balance due on the note was $9,808.81. It was agreed at the trial that if the sale was properly conducted, the deficiency thereafter was $1,957.94, and if the plaintiff was entitled to recover, it would be entitled to that sum with interest at six per cent from the date of the sale.

The evidence most favorable to the defendant was as follows: Those present at the sale were the auctioneer; two vice-presidents of the plaintiff; Virgil Brink, Esquire, attorney for the plaintiff; the defendant; his attorney, David S. Kunian, Esquire; his brother, Setrak Derderian; Setrak's attorney, Walter H. McLaughlin, Esquire; and an unknown stranger, who stood on the sidewalk and took no part in the proceedings. The auctioneer and the representatives of the plaintiff arrived at 9:07, and the sale started at 9:10. Mr. Kunian protested the delay of ten minutes. No one left the premises between 9 and 9:10. The auctioneer first read the published notice of the sale,

which was in part: "Five Hundred Dollars ($500.00) to be paid in cash by the purchaser at the time and place of the sale and the balance in twenty (20) days thereafter. Other terms to be announced at the sale." The auctioneer then announced the "other terms," which were to the effect that anyone desiring to bid should deposit $500 in cash with the auctioneer before he could bid, and that if he should be an unsuccessful bidder, this sum would be returned to him at the conclusion of the sale. Mr. Kunian on behalf of the defendant made a deposit of $500. Neither the plaintiff nor Setrak made any deposit. Mr. McLaughlin on behalf of Setrak constantly protested both the requirement of a deposit as a condition of bidding and the failure of the auctioneer, acting under the advice of Mr. Brink, to cause the plaintiff to comply with this requirement. The first bid was $2,500 made by Mr. McLaughlin. It was refused by the auctioneer upon the advice of Mr. Brink. Mr. Kunian bid $2,600. Mr. Brink on behalf of the plaintiff bid $6,500. Mr. McLaughlin made a bid of $10,073.68, which was refused. Mr. Kunian and Mr. Brink alternated in bidding until Mr. Kunian bid $8,400. Mr. Brink then bid $8,500. Mr. McLaughlin again protested the refusal to accept his bid, and when Mr. Brink told the auctioneer to proceed, the latter "knocked the property down" to the plaintiff for $8,500. Setrak, who was worth $360,000, had $1,000 with him, but acting upon the advice of his attorney, which he approved, as a matter of principle refused to deposit money for the right to bid since the plaintiff did not do so. At one time the auctioneer offered to delay the sale long enough to permit Setrak to go to the plaintiff bank, where he had ample funds, to obtain money. Setrak declined to go. The plaintiff knew that Setrak was worth $10,073.68. Within two months of the sale the plaintiff sold the property for $12,500 after spending $1,083.51 in repairs, $279.17 for taxes, and $19.87 for insurance. The foreclosure expenses were $230, and there was additional interest of $148.41. The property had been independently appraised for the plaintiff a year before at $13,000.

A mortgagee in exercising a power of sale in a mortgage

must act in good faith and use reasonable diligence to protect the interests of the mortgagor. *Clark* v. *Simmons*, 150 Mass. 357, 359. *Sandler* v. *Silk*, 292 Mass. 493, 496. *Chartrand* v. *Newton Trust Co.* 296 Mass. 317, 320. The mere fact of some inadequacy in the selling price does not show lack of either. *Cambridge Savings Bank* v. *Cronin*, 289 Mass. 379, 383. *Atlas Mortgage Co.* v. *Tebaldi*, 304 Mass. 554, 557–558. *Lexington Trust Co.* v. *McCabe*, 313 Mass. 733, 735. But such fact may be considered with other evidence to support a finding of fraud or lack of reasonable diligence. *Kavolsky* v. *Kaufman*, 273 Mass. 418, 423. *Dexter* v. *Aronson*, 282 Mass. 124, 128. *Sandler* v. *Silk*, 292 Mass. 493, 497. This is especially true where the mortgagee is the buyer. "When a party who is intrusted with a power to sell attempts also to become the purchaser, he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal." *Montague* v. *Dawes*, 14 Allen, 369, 373. A mortgagee with the power to select the methods of sale must act as a reasonably prudent man would to obtain a fair price for the property, and if the conditions announced at the sale are unusual and operate to prevent free bidding, it is the mortgagee's duty to change them. *Kavolsky* v. *Kaufman*, 273 Mass. 418, 422–423. See *Clark* v. *Simmons*, 150 Mass. 357, 360; *Cambridge Savings Bank* v. *Cronin*, 289 Mass. 379, 383. Here the requirement of a deposit of $500 as a condition of bidding, first announced at the sale, is unusual. We have never heard of it as a term at real estate auctions. There was no evidence of any such practice, and we have seen no case where there was this condition at a sale of real estate by auction. The amount, to be sure, was the same which, by the advertised notice, the successful bidder would have had to pay at the sale, and any serious bidder undoubtedly would have had this sum with him. On the other hand, if there were a large number of bidders, it might enable the auctioneer to have possession of an amount of cash greater than the value of the real estate to be sold. In any event, a bidder might well hesitate to entrust his money to the auctioneer before it was received on account of the purchase

price. A bidder might also object to committing himself to wait around for the return of his money until the conclusion of the sale should the bidding go above the highest amount he cared to bid. At least, it could not be ruled that it was, as matter of law, reasonable diligence for the first time to disclose this requirement in a surprise announcement at the outset of the bidding. While a purpose of the condition may have been to ensure bidding in good faith, we cannot say that the jury could not properly find that it operated to chill the bidding. The plaintiff urges that the failure of Setrak to bid was not due to inability to comply, but was because of the omission of the auctioneer, who was acting under the advice of the plaintiff's attorney, to apply this condition to the plaintiff. It is true that the mortgagee would not have been obliged to pay any money unless its bid exceeded the amount due on the mortgage plus the expenses of the sale. See *Sage* v. *Central Railroad*, 99 U. S. 334, 344–345. Likewise an exception in favor of persons of known responsibility could have been made in the terms of the sale. *Pope* v. *Burrage*, 115 Mass. 282, 285. See *Atlas Mortgage Co.* v. *Tebaldi*, 304 Mass. 554, 559–560. Still this unexpressed exception in favor of the mortgagee was a part of, or an amendment to, the requirement and, we think, was a circumstance to be weighed in considering whether the course followed by the mortgagee, either in the time and manner of promulgating the deposit requirement for bidding or in failing to waive it, was one calculated "to get for the property as much as it . . . [could] reasonably be made to bring." See *Clark* v. *Simmons*, 150 Mass. 357, 360. And this is particularly true where the property was purchased by the mortgagee for substantially less than the amount of a bid which one who was known to the plaintiff to be responsible to this extent had offered to make.

The plaintiff contends that as the defendant and his attorney attended the sale and did not protest this requirement, there was as matter of law a waiver of all objections to the manner in which the sale was conducted. Compare *Flynn* v. *Curtis & Pope Lumber Co.* 245 Mass. 291, 297. The procedure at the sale, however, was amply criticised

by others in the defendant's presence. It could not be ruled that waiver, which is usually a question of fact, had been proved. *Samuel* v. *Page-Storms Drop Forge Co.* 243 Mass. 133, 136. *Nashua River Paper Co.* v. *Lindsay,* 249 Mass. 365, 368. *Doujotos* v. *Leventhal,* 271 Mass. 280, 283. The plaintiff's motion for a directed verdict was rightly denied, and the plaintiff's requests numbered 2, 3, 5, and 7 were properly refused.

The judge denied the plaintiff's fourth request for instructions, which was: "I instruct you as a matter of law that the auctioneer's delay in commencing the foreclosure sale until five or ten minutes after 9 A.M., which was the time advertised, does not constitute a failure on the part of the plaintiff to exercise good faith or reasonable diligence in protecting the interests of the mortgagor." This request also was rightly denied. It unqualifiedly assumed facts which, although apparently unfavorable to the plaintiff, were not required to be found to exist. *Liberatore* v. *Framingham,* 315 Mass. 538, 543. Moreover, the facts unqualifiedly assumed in the request do not include all the facts bearing upon the issue of the effect of delay in commencing the foreclosure sale that could have been found on the evidence.

*Verdict to stand.*