ANDOVER SAVINGS BANK *vs.* WILLIAM J. BASHA.

Essex.    January 3, 1951. — February 2, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Mortgage,* Of real estate: foreclosure.

A finding of bad faith on the part of a bank in foreclosing in 1940 a real
   estate mortgage held by it was not warranted by evidence that the
   notice of the foreclosure sale was published only in the town where the
   property was located; that the mortgagor, who lived in an adjoining
   city where he could have been easily located, never had any notices of
   "delinquency . . . on" the mortgage note or any actual notice of the
   sale; that the only persons attending the sale were two representatives
   of the bank and a real estate agent; and that the bank bought the
   property by a single bid for substantially less than its fair value.

CONTRACT for a deficiency remaining due on a mortgage
note after foreclosure.    Writ in the District Court of Law-
rence dated March 19, 1945.

Upon removal to the Superior Court, the action was tried
before *Murray,* J.    Following a verdict for the defendant,
the judge ordered entered a verdict for the plaintiff under
leave reserved and reported the action.

*H. F. Collins,* (*M. W. Loughlin* with him,) for the de-
fendant.

*W. C. Tomlinson,* for the plaintiff.

SPALDING, J.    The question for decision here is whether
there was sufficient evidence to warrant a finding that the
plaintiff, which seeks to recover a deficiency on a mortgage
note payable to it, was guilty of bad faith in the foreclosure
of the mortgage.

At the trial the defendant admitted that he signed the
note; that it was a witnessed note; that there was "a tech-
nical and literal compliance with the law in the foreclosure
of the mortgage securing said note; that there was no in-
tentional fraud or misconduct on the part of the plaintiff

in the foreclosure of the mortgage; and that there was a breach of the mortgage conditions."

The note (the face amount of which was $7,000) and the mortgage were dated August 16, 1927. The real estate covered by the mortgage was located in Methuen. "There was no provision in the mortgage . . . requiring actual notice of a foreclosure sale . . . to be given to the mortgagor.[1] The usual mortgagee's notice of a foreclosure sale was published in the Methuen Transcript, the only newspaper published in the town of Methuen."

The following is a summary of the pertinent evidence: The defendant testified that he received no notice of the foreclosure sale and had no knowledge of it. "He never knew he owned the mortgaged property," and never lived in it. From 1927 to 1930 his brother-in-law lived in the property, and in 1930 it was sold to a person named Grinka. The defendant never received notice from the plaintiff of interest payments due on the note, and never received any tax bills with respect to the property. At the time the mortgage was foreclosed the defendant resided in Lawrence, a city adjoining Methuen, and had resided there since 1937. There was evidence that there was a newspaper published in Lawrence with a circulation there of fifty thousand and a large circulation in Methuen.

There was testimony by the plaintiff's treasurer that "he had no contact with the defendant from 1934 to the time of the foreclosure sale," and that the plaintiff sent "no notices to the defendant at any time of delays in payment of interest or delinquency of any kind on said note." He further testified that it was "fair to say that the plaintiff could have easily located the defendant" at his address in Lawrence "for the purpose of notice of the foreclosure sale on the day of said sale."

The mortgage was foreclosed by the plaintiff on July 29, 1940. It appeared that the foreclosure sale was attended

---

[1] Since the sale occurred prior to the enactment of G. L. (Ter. Ed.) c. 244, § 17B, as inserted by St. 1945, c. 604, § 1, the provisions of that section with respect to notice are not applicable.

by the plaintiff's treasurer and its attorney, and a real estate agent. We infer that they were the only persons present. The property was bid in by the plaintiff's treasurer for $5,000, and this was the only bid. On September 20, 1940, about seven weeks after the sale, the plaintiff sold the property for $5,500. A real estate agent testified that the fair market value of the property at the time of the foreclosure sale was from $7,500 to $8,000.

At the close of the evidence the plaintiff presented a motion for a directed verdict, which the judge denied. The amount of the verdict, if the plaintiff was entitled to recover, was agreed upon by the parties. In response to the question: "What was the fair value of the mortgaged property on July 29, 1940, the day of the foreclosure sale?" the jury answered: "$7,500." The jury returned a verdict for the defendant. The judge under leave reserved then entered a verdict for the plaintiff for the amount set forth in the declaration and the case comes here by report, the terms of which were that if there was error in entering the verdict for the plaintiff under leave reserved the verdict for the defendant is to stand; otherwise the verdict entered for the plaintiff is to stand.

There was no error.

The principles of law governing cases of this sort have been set forth in numerous decisions of this court, and need not be restated. It will suffice to cite the following cases: *Cambridge Savings Bank* v. *Cronin*, 289 Mass. 379, *Sandler* v. *Silk*, 292 Mass. 493, 496–497, *Atlas Mortgage Co.* v. *Tebaldi*, 304 Mass. 554, 557–558, *Lexington Trust Co.* v. *McCabe*, 313 Mass. 733, *Union Market National Bank* v. *Derderian*, 318 Mass. 578, 581–582, *West Roxbury Cooperative Bank* v. *Bowser*, 324 Mass. 489, 492–493. We assume, in view of the disparity between the evidence of market value and the price obtained at the foreclosure sale, that it could have been found that the latter was inadequate. But that without more would not show bad faith. There was no evidence that the plaintiff did anything to chill the sale. See *Union Market National Bank* v. *Derderian*, 318

Mass. 578, 582–583. Nor were the circumstances such that there was a duty to postpone it. The facts that the defendant had no notice of the sale, that the sale was not advertised more extensively, that the plaintiff was the purchaser at the sale, and that the only persons attending the sale were representatives of the plaintiff and a real estate agent, standing alone, were not proof of bad faith. Proof of these facts might with other evidence present a question for the jury on this issue, but the defendant, on whom the burden rested, failed to show that these things occurred in circumstances that would warrant a finding of bad faith.

*Judgment for the plaintiff.*

