SEPPALA & AHO CONSTRUCTION CO. *vs.* HOWARD C. PETERSEN & others, trustees.[1]

Worcester.    January 3, 1977. — September 14, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Mortgage,* Of real estate: foreclosure.

Mere authorization by a mortgagee of premises to a contractor, who had erected two industrial buildings and was owed large sums by the mortgagor and had attached the mortgaged property, to winterize and to make repairs to the larger of the two buildings, as requested by the contractor on meeting the mortgagee on the premises, in the circumstances did not constitute an "effectual" entry for the purposes of foreclosure under G. L. c. 244, § 2; it was held that upon a claim by the contractor of lack of reasonable diligence by the mortgagee in completing the foreclosure and of loss to the contractor of its lien on the mortgagor's equity, the timeliness of the mortgagee's completion of foreclosure proceedings must be measured from the time, six months after the authorization to winterize and repair, when the mortgagee sent notice to the mortgagor and the contractor

---

[1] J. Harris Latimer, Samuel H. Ballam, Jr., Fred Wolf, Jr., Robert D. Bernheim, S. Davidson Herron, Jr., Mathew B. Weinstein, and James B. Smith as trustees of Fidelco Growth Investors.

Seppala & Aho Construction Co. *v.* Petersen.

of intent to foreclose and filed a petition for authority to enter and exercise the power of sale, and that the evidence did not warrant a finding that the foreclosure, by sale four months after commencement of the proceedings, was not completed within a reasonable time. [321-327]

Even if the price at which a mortgagee sold the premises after he had purchased it at the mortgage foreclosure sale indicated that the foreclosure price was less than the fair market value of the premises at the time of the foreclosure sale, the circumstances disclosed no basis of liability by the mortgagee to a creditor of the mortgagor who had attached the mortgaged premises. [327-328]

BILL IN EQUITY filed in the Superior Court on January 22, 1972.

The suit was heard by *Meagher*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*William J. LeDoux* for the defendants.
*Alphonse P. San Clemente* for the plaintiff.

QUIRICO, J.   The plaintiff Seppala & Aho Construction Co., Inc. (Seppala & Aho), junior creditor of the mortgagor, Ronrino Realty Trust (Ronrino), brought a bill in equity in the Superior Court against the first mortgagee, the trustees of Fidelco Growth Investors (Fidelco). The bill alleged that Fidelco had violated a duty owed to the plaintiff to exercise due diligence to commence proceedings to foreclose a mortgage on real estate in Leominster, and that as a result of Fidelco's delay Seppala & Aho lost its lien on the mortgagor's equity in the property. The trial judge found for the plaintiff, and awarded damages of $85,000, with interest. Fidelco's appeal was entered in the Appeals Court, and we transferred the case here. G. L. c. 211A, § 10 (A). There is before us the judge's report of material facts and a transcript of the evidence. We reverse because in the circumstances of this case Fidelco was under no obligation to commence foreclosure proceedings promptly after Ronrino's default.

We summarize the facts. In November, 1970, Irvin Freedman and Albert Zimmerman, the trustees of Ronrino, entered into a construction contract with Seppala &

Aho to construct two industrial buildings on land in Jytek Industrial Park in Leominster, for $750,000, to be completed by May 2, 1971.

Seppala & Aho commenced construction despite Ronrino's inability to obtain a construction loan. In February, 1971, Seppala & Aho notified Ronrino that construction would stop if no payment was forthcoming. By March, 1971, Seppala & Aho had nearly completed the buildings, and was owed approximately $500,000. Indeed, it appears that at that time Ronrino had not yet purchased the land on which the buildings were constructed.

In March, Fidelco committed $965,000 in first mortgage funds to the project. Further negotiations ensued, particularly regarding Seppala & Aho's reluctance to finish construction unless it was compensated. Under the agreements that were reached, Fidelco disbursed $800,000 at the loan closing. This sum was applied as follows: Seppala & Aho received $515,000 immediately, $150,000 was deposited in an escrow account which was released to Seppala & Aho in three periodic payments of $50,000 each as construction progressed, and the remaining $135,000 was paid for the land, title insurance costs, legal costs, and closing costs. The balance of $85,000 due to Seppala & Aho on its $750,-000 contract was to be paid on completion of the buildings. This transaction was documented by (1) a mortgage to Fidelco from Ronrino, (2) an escrow agreement, and (3) a modification of the original construction contract between Seppala & Aho and Ronrino whereby no mortgage monies above $800,000 were to be distributed to Ronrino by Fidelco until Seppala & Aho was paid, and whereby Seppala & Aho could require Ronrino to convey its equity to it if Ronrino defaulted in the required mortgage payments. Fidelco was not a party to the modification agreement.

Ronrino soon defaulted on the mortgage, and in May, 1971, Seppala & Aho agreed to cover the default with funds from the second payment of $50,000 from the escrow account. Ronrino did not make the June or July mortgage payments and Seppala & Aho then brought suit against Ronrino and attached the mortgaged property. On July

20, 1971, Fidelco formally advised Seppala & Aho of the default. The buildings were substantially completed by July, and were certified for occupancy in August. There remained a dispute about the installation of the fire alarm system in the larger building, which delayed the issuance of an unconditional certificate of occupancy on that building until February, 1972.

In November, 1971, Fidelco learned that the trustees of Ronrino had moved to Florida. At some point the smaller building was occupied under a lease given by Ronrino and assigned to Fidelco who received the rents, but the larger building remained unoccupied.

In December, 1971, Seppala & Aho expressed concern to Fidelco that the larger building had not been winterized, the heat had not been turned on, pipes had burst, floors had cracked, and vandalism had occurred. Seppala & Aho asked Fidelco to foreclose the mortgage at that time.

In January, 1972, representatives of Seppala & Aho and Fidelco met on the premises. Fidelco authorized Seppala & Aho to winterize the building and install a fire alarm system, and later paid for this work.

Throughout the winter Fidelco, with the assistance of Seppala & Aho, sought a purchaser for the buildings. Negotiations with at least one potential buyer terminated without agreement. Seppala & Aho considered taking a deed in lieu of foreclosure, and assuming the mortgage, but rejected the idea because Ronrino demanded $75,000 above the outstanding indebtedness to Fidelco. On July 13, 1972, Fidelco notified Ronrino of its intention to foreclose the mortgage. On November 27, 1972, Fidelco purchased the property at the foreclosure sale for $990,000, which equaled the total amount of Ronrino's indebtedness. There had been $800,000 advanced, and $190,000 in charges had accrued in sixteen months after default in July, 1971.

Fidelco sold the large building on March 5, 1973, for $841,000, and the small building on May 18, 1973, for $235,000, a total of $1,076,000.

The judge concluded that as of January, 1972,[2] when Fidelco authorized Seppala & Aho to winterize the unoccupied building, "[f]or all practical purposes Fidelco had taken actual physical possession of the premises under the powers granted to them in the mortgage." He further found that Fidelco "did not complete the foreclosure with reasonable diligence, ... that there was no bad faith on their part in that they attempted to deliberately wipe out ... [Seppala & Aho's] interest; namely, the $85,000 remaining to be paid upon the construction contract ... [and] that there was no fraud or collusion on the part of Fidelco with Ronrino or anyone to deprive Seppala and Aho of the balance due on the contract." He also found that the fair market value of the property was $1,000,000 in August, 1971, and that the property "was sold at the foreclosure sale for less than its fair market value, as evidenced by the private sale after the foreclosure sale by Fidelco."

From the default by Ronrino in June, 1971, until the foreclosure sale in November, 1972, Ronrino's debt to Fidelco rose from $800,000, to $990,000, by reason of the addition of unpaid interest and other charges. Seppala & Aho claims that had Fidelco foreclosed earlier, the debt would have been smaller — less interest would have accrued — and some equity in the property would have remained to pay Seppala & Aho.

We have frequently stated that the basic rule of law applicable to the foreclosure of real estate mortgages is that "a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." *West Roxbury Co-op. Bank* v. *Bowser,* 324 Mass. 489, 492 (1949). *Manoog* v. *Miele,* 350 Mass. 204, 206 (1966). *Union Mkt. Nat'l Bank* v. *Derderian,* 318 Mass. 578, 581-582 (1945). *Sandler* v. *Silk,* 292 Mass. 493, 496 (1935). *Cambridge Sav. Bank* v. *Cronin,* 289 Mass. 379, 382 (1935).

---

[2] The judge's findings of fact, by inadvertence, stated that the date was January, 1973.

"This duty and obligation is available for the protection not only of the mortgagor but of those claiming in his right, including those holding junior encumbrances or liens," *Sher* v. *South Shore Nat'l Bank*, 360 Mass. 400, 401 (1971), and thus including Seppala & Aho's attachment. *Sandler* v. *Silk*, 292 Mass. 493, 496 (1935).

The precise question before us is whether Fidelco, by reason of its failure or refusal to foreclose the Ronrino mortgage promptly after the latter's default, violated any duty owed to Seppala & Aho under the rule stated above.

The judge expressly found that Fidelco was not guilty of any bad faith nor of any attempt deliberately to wipe out Seppala & Aho's interest, and that there was no fraud or collusion on the part of Fidelco with Ronrino or anyone else to deprive Seppala & Aho of the balance due on the contract. Yet he found in favor of Seppala & Aho in the amount of $85,000. He did so on the basis of findings stated in his decision that (a) Fidelco "did not complete the foreclosure with reasonable diligence," and (b) "[t]he property in question was sold at the foreclosure sale for less than its fair market value." We now examine separately these two grounds for the decision.

1. *Reasonable diligence in foreclosing mortgage.* As a preliminary question we must determine by what events the timeliness of Fidelco's prosecution of the foreclosure is to be measured. The judge appears to have considered the date of Ronrino's default, and to have assumed that Fidelco's meeting with Seppala & Aho on the mortgaged premises on January, 1972, was an entry into possession for the purpose of foreclosing the mortgage.[3] This conclusion is in conflict with the applicable statutes and a number of our decisions which recognize that not every entry by a mortgagee on the mortgaged premises is an entry into possession for the purpose of foreclosure.

By G. L. c. 244, § 1, "[a] mortgagee may, after breach of condition of a mortgage of land, recover possession of

---

[3] The judge found that the foreclosure was ten months after "the entry or possession in January."

the land mortgaged by an open and peaceable entry thereon ...; and possession so obtained, if continued peaceably for three years, shall forever foreclose the right of redemption." This entry must be accompanied by the prompt recording of a memorandum or certificate of the entry. G. L. c. 244, § 2. See G. L. c. 185, § 70 (registered land). In the absence of such recording, the entry is ineffective for the purposes of foreclosure. G. L. c. 244, § 2. *Fitchburg Co-op. Bank* v. *Normandin,* 236 Mass. 332, 335 (1920), and cases cited.

The record on appeal does not indicate that any memorandum or certificate of entry to foreclose the mortgage was executed or recorded. If the meeting on the premises in January, 1972, can be considered an entry intended for the purposes of foreclosure, which is doubtful, it cannot be considered an "effectual" one in the terms of G. L. c. 244, § 2. See *Corrigan* v. *Payne,* 312 Mass. 589, 591-592 (1942), and cases cited; *Skolnick* v. *East Boston Sav. Bank,* 307 Mass. 1, 6 (1940). Further, there was uncontroverted evidence that Fidelco did not intend to take possession of the larger, unoccupied building. The rent Fidelco received from the smaller building was by virtue of an assignment of the leases, and not from an entry into possession and assertion of paramount title. It is true that Fidelco authorized Seppala & Aho to winterize and make minor repairs to the larger building, but this authorization was the result of a request by Seppala & Aho. Such a responsive action cannot now be bootstrapped into an entry into possession for the purpose of foreclosure.

It follows that the timeliness of Fidelco's completion of foreclosure proceedings must be measured from July 13, 1972, when it sent notice to Ronrino and Seppala & Aho of its intention to foreclose, and petitioned the Superior Court for authority to enter and to exercise the power of sale in accordance with the Soldiers' and Sailors' Civil Relief Act of 1940. See *Beaton* v. *Land Court,* 367 Mass. 385, appeal dismissed, 423 U.S. 806 (1975).

Because the record does not contain the pertinent information, the details of Fidelco's actions in completing

the foreclosure cannot be set forth. The record does contain a copy of the notice dated July 13, 1972, and returnable on August 23, 1972, sent by Fidelco to Ronrino and Seppala & Aho under the Soldiers' and Sailors' Civil Relief Act. That notice states that the mortgagee has filed a bill asking for authority to foreclose the mortgage "by entry on and possession of the premises ... and by exercise of the power of sale." It does not appear whether Fidelco did enter into possession, but the judge found that the property was sold at a foreclosure sale on November 27, 1972.

We note that G. L. c. 244, § 14, as amended by St. 1975, c. 342, requires the publication of notice of the sale "once in each of three successive weeks, the first publication to be not less than twenty-one days before the day of sale." Thus, compliance with the minimum statutory time periods for the accomplishment of a foreclosure, without considering whether a mortgagee may wish to advertise more extensively than is provided for by statute, accounted for a good deal of the time between July 13, 1972, and November 27, 1972. Therefore, measuring Fidelco's diligence by the time between those two dates, the evidence does not warrant the finding that the foreclosure was not completed with reasonable diligence. However, Seppala & Aho contends that it must be measured from Ronrino's default in June, 1971. We have found no prior case in our law in which a mortgagee has been held liable in damages for delay in commencing proceedings to foreclose a mortgage.

The effect of delay in commencing foreclosure has been before this court in several analogous contexts. In *City Inst. for Sav.* v. *Kelil,* 262 Mass. 302 (1928), the mortgagor's grantee defaulted, and the mortgagor first asked the mortgagee to foreclose the mortgage on June 24, 1925, and repeated the request in December, 1925. The mortgagee entered and took possession for the purpose of foreclosure on January 5, 1926, and sold the property on April 13, 1926. The property declined in value from $28,000 at the time of the first request, to $25,000 at the time of the second request, to $18,500, received at the auction. The

mortgagor contended that "the failure of the ... [mortgagee to do] as requested discharged him from liability for the deficiency resulting from the foreclosure sale." *Id.* at 307. This court held that "[t]he inaction or forbearance ... to enforce the mortgage did not discharge the defendant." *Ibid.*

In *Lewis* v. *Blume,* 226 Mass. 505 (1917), the mortagee delayed foreclosure from 1895, when the principal of the note was payable, until 1913; interest and taxes were apparently paid until November, 1912. The premises declined in value from $8,900 in 1895, to $3,500 when sold at the foreclosure sale in 1913. In a suit for the deficiency on the note, the mortgagor contended that he was damaged by the mortgagee's failure to foreclose on the due date of the note. This court answered that argument as follows: "Nothing is better settled than the proposition that it is the duty of the debtor to pay his debt and that it is not the duty of the creditor to see that it is paid. ... It is accordingly established that *mere forbearance to foreclose a mortgage given as security is no defence,* even if more would have been realized by the mortgage had it been promptly foreclosed" (citations omitted; emphasis added). *Id.* at 508. See *Phillips* v. *Vorenberg,* 259 Mass. 46, 72 (1927).

In *North End Sav. Bank* v. *Snow,* 197 Mass. 339, 342 (1908), we stated the doctrine that "mere inaction or delay on the part of the creditor in the enforcement of his rights against the principal debtor will not discharge the surety," yet found a binding agreement for delay between the mortgagee and the mortgagor's grantee which discharged the mortgagor.

In *Porter* v. *Engel,* 286 Mass. 33, 36 (1934), we said that "[t]he circumstance that the ... [mortgagee] received payments from time to time from the owners of the equity, and that he delayed in the enforcement of his rights under his mortgage, did not affect or impair his rights against the ... [mortgagor]." In *Brown* v. *Kaplan,* 302 Mass. 510, 513 (1939), we said that "[m]ere inaction or delay by the ... [mortgagee] in foreclosing would not discharge the ... [mortgagor who had conveyed the prop-

erty subject to the mortgage]" (citations omitted). See *Davis* v. *Newburyport Five Cents Sav. Bank*, 311 Mass. 377 (1942) (time periods roughly comparable to those in this case); *Radley* v. *Shackford*, 226 Mass. 435 (1917) (no interest on note for more than two years before foreclosure).

These cases, of course, are not dispositive of the present issue, yet they illustrate a reluctance to place a duty on the mortgagee to commence foreclosure promptly after default. The many cases permitting, but not requiring, a mortgagee to adjourn the foreclosure sale show a similar flexibility regarding the timing of foreclosure. *DesLauries* v. *Shea*, 300 Mass. 30, 35 (1938). *Carilli* v. *Hersey*, 299 Mass. 139, 144 (1937). *Chartrand* v. *Newton Trust Co.*, 296 Mass. 317, 321-322 (1936). *Cambridge Sav. Bank* v. *Cronin*, 289 Mass. 379, 383 (1935). *Taylor* v. *Weingartner*, 223 Mass. 243, 248 (1916). *Dexter* v. *Shepard*, 117 Mass. 480, 485 (1875).

Furthermore, G. L. c. 244, § 1, which provides for foreclosure by entry, requires that after an entry to foreclose the possession must continue peaceably for three years before it can ripen into a foreclosure. See *Grabiel* v. *Michelson*, 297 Mass. 227 (1937). It might be argued that under the reasoning adopted by the judge in this case a mortgagee who fully complied with the statute in foreclosing by entry and possession could be liable for delay in completing the foreclosure. The applicable statutes of limitations regarding foreclosure of mortgages, G. L. c. 237, § 3 (twenty years of adverse possession),[4] and G. L. c. 260, §§ 33-35 (fifty years for obsolete mortgages),[5] suggest that the Legislature contemplated the passage of considerably

[4] See *O'Connell* v. *Everett*, 274 Mass. 602, 605 (1931); *Anthony* v. *Anthony*, 161 Mass. 343 (1894); *Holmes* v. *Turner's Falls Co.*, 150 Mass. 535, 549 (1890); *Kellogg* v. *Dickinson*, 147 Mass. 432, 437 (1888); *Bacon* v. *McIntire*, 8 Met. 87, 90 (1844).

[5] See *Marshall* v. *Francis*, 332 Mass. 282 (1954); Thirty-Second Report of the Judicial Council, Pub. Doc. No. 144, at 20-23 (December, 1956); Nekam & O'Reilly, Security, Mortgages, and Other Creditor's Rights, 1954 Ann. Survey Mass. Law § 10.3; Moynihan, Property and Conveyancing, 1957 Ann. Survey Mass. Law § 11.6; M.E. & D.D. Park, Conveyancing § 425 (1968).

long periods of time before a mortgagee loses his right to foreclose. These statutes do not suggest the existence of a duty of prompt commencement of foreclosure of mortgages.

The duty of reasonable diligence has never been construed to compel a mortgagee at his peril to commence foreclosure proceedings promptly after default. Rather this duty requires effort and attention by the mortgagee to conduct the sale of the property fairly and in good faith through the observance of the procedural requirements of the statutes and the mortgage.[6] Indeed, the judge expressly found that there was no bad faith or sharp dealing by Fidelco in this case.

In the absence of such a finding, an award of damages to a junior lienor for a mortgagee's delay in commencing foreclosure would be unwarranted. We do not exclude the possibility that in an exceptional case delay would bear on the issue of bad faith, but this is hardly such a case. To award damages to a junior lienor for a delay in commencing foreclosure would be tantamount to permitting the mortgagor or junior lienholder to compel foreclosure. We have found no case in American jurisprudence which authorizes such compulsion.[7]

Strong reasons of policy support the result we have

---

[6] See *Guarino* v. *Farley,* 360 Mass. 873 (1972); *Sher* v. *South Shore Nat'l Bank,* 360 Mass. 400, 402 (1971); *Manoog* v. *Miele,* 350 Mass. 204, 207 (1966); *Richmond* v. *Stanzler,* 327 Mass. 62, 63 (1951); *Andover Sav. Bank* v. *Basha,* 326 Mass. 725, 727-728 (1951); *West Roxbury Co-op. Bank* v. *Bowser,* 324 Mass. 489, 492 (1949); *Lexington Trust Co.* v. *McCabe,* 313 Mass. 733, 735 (1943); *Atlas Mortgage Co.* v. *Tebaldi,* 304 Mass. 554, 558 (1939); *Chartrand* v. *Newton Trust Co.,* 296 Mass. 317, 320 (1936); *Cambridge Sav. Bank* v. *Cronin,* 289 Mass. 379, 383 (1935). Cf. *Union Mkt. Nat'l Bank* v. *Derderian,* 318 Mass. 578, 583 (1945); *Sandler* v. *Silk,* 292 Mass. 493, 496 (1935); *Kavolsky* v. *Kaufman,* 273 Mass. 418, 422-423 (1930).

[7] Cases from other jurisdictions hold that a mortgagee may select the time for enforcing his security, and that, in the absence of statute or contract to the contrary, a mortgagor or one claiming under him has no right to compel the mortgagee to foreclose on breach of condition. *Housing Equity Corp.* v. *Joyce,* 265 Md. 570, 582 (1972). *J.H. Morris, Inc.* v. *Indian Hills, Inc.,* 282 Ala. 443, 452-454 (1968). *Cone Bros. Constr. Co.* v. *Moore,* 141 Fla. 420, 426 (1940). *Estelle* v. *Hart,* 55 S.W.2d 510, 513-514 (Tex. Comm'n App. 1932). *Mounce* v. *Wightman,*

reached. Mortgagees should not feel compelled to under-take the drastic remedy of foreclosure, thereby termi-nating the mortgagor's interest in the property, where alternative accommodations are possible. Temporarily de-pressed conditions in the real estate market may counsel against foreclosure; a mortgagor may have experienced temporary reverses, but the debt may remain adequately secured. The imposition of a vague duty on a mortgagee to commence foreclosure promptly after default, though ben-eficial to the plaintiff in this case, could work to the great detriment of mortgagors and junior lienholders generally. Under such a rule mortgagees would no doubt begin foreclosures soon after default rather than risk damage judgments for delay in commencing foreclosure proceed-ings. In many cases this would wipe out all junior liens along with the owner's equity of redemption. Such a drastic result should not be compelled.

2. *Foreclosure sale price.* Fidelco purchased the prop-erty at the foreclosure sale for $990,000. The judge found that the property "was sold at the foreclosure sale for less than its fair market value, as evidenced by the private sale after the foreclosure sale by Fidelco. . . . Fidelco sold the large building March 5, 1973 for $841,000 and the small building on May 18, 1973 for $235,000," a $1,076,000 total. It is questionable whether the fact of the sale of the build-ings for $1,076,000 in March and May, 1973, supports a conclusion that the foreclosure price of $990,000 was less than the fair market value of the property at the time of the foreclosure sale in November, 1972. However, we need not pursue that point because, even if true, it would not itself form any basis of liability by Fidelco to Seppala & Aho in view of the entire circumstances.

In *Clark* v. *Simmons,* 150 Mass. 357, 361 (1890), we

29 Ariz. 567, 571 (1926). *Marshall* v. *Davies,* 78 N.Y. 414, 421 (1879). *White* v. *Lucas,* 46 Iowa 319, 320-321 (1877). See *Scott* v. *Security Title Ins. & Guar. Co.,* 9 Cal. 2d 606, 613-614 (1937). Cf. *Mowry* v. *Mowry,* 137 Mich. 277 (1904); 59 C.J.S. Mortgages § 488 (1949); 55 Am. Jur. 2d Mortgages § 552 (1971); 1 C.H. Wiltsie, Mortgage Fore-closure § 16 (5th ed. 1939).

said: "Inadequacy of price will not invalidate a sale, unless it is so gross as to indicate bad faith, or a want of reasonable judgment and discretion in the mortgagee." There was no finding of either bad faith or want of reasonable judgment and discretion by the mortgagee in the present case. In *Austin* v. *Hatch*, 159 Mass. 198, 199 (1893), we said: "Mere inadequacy of price is no reason for setting aside a sale. . . . It is a notorious fact that, when land is sold by auction under a power contained in a mortgage, it seldom, if ever, brings a price which reaches its real value. If this is a hardship upon a mortgagor or those claiming under him, it is owing to the contract which he has made, and which the mortgagee has a right to have carried out." The rule that "mere inadequacy of [the foreclosure sale] price alone does not necessarily show bad faith or lack of due diligence" has been repeated or applied by this court in many cases. *Sher* v. *South Shore Nat'l Bank*, 360 Mass. 400, 402 (1971), and cases cited. In a rather extreme case, *Sandler* v. *Silk*, 292 Mass. 493, 497 (1935), involving the foreclosure of a second mortgage, we said: "The price obtained at the sale was less than one half of the value of the equity of redemption. Disparity between the price obtained and the true value alone is not sufficient to warrant a finding that the sale was conducted fraudulently. . . . It may, however, be considered in connection with other evidence to support a finding of fraud."

We have stated in a number of our decisions that "[w]hen, as was the fact under the mortgage in this case, a mortgagee rightfully is both seller and buyer, his position is one of great delicacy. Yet, when he has done his full duty to the mortgagor in his conduct of the sale under the power, and the bidding begins, in his capacity as bidder a mortgagee may buy as cheaply as he can, and owes no duty to bid the full value of the property as that value may subsequently be determined." *Cambridge Sav. Bank* v. *Cronin*, 289 Mass. 379, 383 (1935), and cases cited. *Manoog* v. *Miele*, 350 Mass. 204, 206 (1966). *West Roxbury Co-op. Bank* v. *Bowser*, 324 Mass. 489, 492-493 (1949).

3. *Conclusion.*    Applying the rules discussed above to those subsidiary facts which were properly found by the judge, we hold that they do not support a conclusion that Fidelco violated any duty owed by it to Seppala & Aho in the foreclosure of the mortgage in question. The final decree entered on November 29, 1973, is affirmed as to par. 1, dismissing the bill of complaint of Edward G. Shamgochian against the trustees of Fidelco, and as to par. 2, dismissing the bill of complaint of Seppala & Aho against Latimer and Buck, Inc., and Latimer and Buck Advisers, Inc. The final decree is vacated as to par. 3 thereof awarding damages of $85,000, plus interest, to Seppala & Aho Construction Co., Inc., against the trustees of Fidelco Growth Investors, and instead judgment is to be entered to the effect that this plaintiff takes nothing against these defendants, and that the action be dismissed as to them. Mass. R. A. P. 28, 365 Mass. 877 (1974).

*So ordered.*