Whitehead, J.
Plaintiff Shawmut Bank, N.A. (“Shawmut”) seeks recovery against defendants James P. Duffy (“Duffy”) and John D. Doucette (“Doucette”), on four promissory notes. In addition to the remaining outstanding balances due on the notes, Shawmut seeks accrued interest, costs, expenses of collection, and attorney’s fees. Shawmut has moved for summary judgment pursuant to Mass.R.Civ. P. 56(c).
BACKGROUND
On December 18, 1986, Duffy and Doucette executed two demand promissory notes.[2] The first note was in the amount of $158,000.00, and was secured by a mortgage on property located at 779-781 Westford Street, Lowell, Massachusetts. The second note was in the amount of $205,000.00, and was secured by a mortgage on property located at 199-201 Wilder Street, Lowell, Massachusetts. The initial interest rate on each note was 10.25%. Beginning on June 10, 1988, and at the end of each successive twelve month period thereafter, the interest rates were to be adjusted to 2% per annum over the bank’s average prime rate for the previous twelve month period. Each mortgage provided at ¶11:
If the mortgagee shall become involved in any action or course of conduct with respect to the premises ... in order to protect its interest therein, including without limitation: the mortgagee’s commencement and prosecution of foreclosure proceedings .. . The mortgagee’s entering the premises care and management thereof.. . The mortgager shall reimburse the mortgagee for all charges, costs and expenses incurred by the mortgagee in connection therewith, including without limitation attorney’s fees . . .
Duffy and Doucette ultimately defaulted on their obligations under the notes.[3]
On January 27,1992, Duffy and Doucette executed two additional interest-free promissory notes to bring the prior loans current. The first additional note was in the amount of $12,305.76, payable in full two (2) years from date. The second additional note was in the amount of $15,511.00, also payable in full two (2) years from date. Each additional promissory note provided:
The undersigned agree [sic] to pay to the holder hereof, on demand, all expenses of every kind, including reasonable attorneys’ fees which the holder may incur in the enforcement and collection of this note, or of any of the rights of the holder hereunder, or any of its rights contained in the mortgage given as security for this note.
In consideration of Duffy’s and Doucette’s agreement to execute the additional notes, Shawmut reduced the interest rate on the original notes from 10.25% and 2.0% over prime, to 8.5% per annum.[4] As with the original notes, Duffy and Doucette were unable to meet their obligations under the new promissory notes.
By letters dated November 25, 1992, Shawmut, through its attorney Annmarie Roark (“Roark”), in *351 formed Duffy and Doucette of their default under all of the notes and demanded payment of the outstanding balances then due. Duffy and Doucette did not make payment.
On December 9, 1992, Complaints to Foreclose the mortgages were filed with the Massachusetts Land Court (Nos. 187-247 and 187-248). On December 10, 1992, the Land Court issued Orders of Notice with respect to the Soldiers’ and Sailors’ Civil Relief Act of 1940, as amended. Copies of the Orders of Notice were recorded with the Middlesex County (Northern District) Registry of Deeds on December 23,1992, in Book 6276, Pages 38 and 39, published in the Lowell Sun not less than twenty-one (21) days before the return date, served upon defendants via deputy sheriff, and sent to each defendant by certified mail, return receipt requested, not less than fourteen (14) days before the return date.
Returns on the Orders of Notice were made to the Land Court on January 15, 1993. Judgment was entered on February 2, 1993, authorizing Shawmut to make entry and foreclose the mortgages.
By letters dated March 15, 1993, Roark notified Duffy and Doucette of Shawmut’s intention to foreclose on the mortgages and sell 779-781 Westford Street and 199-201 Wilder Street. Roark also notified defendants of their potential liability for any deficiency, should the foreclosure sale proceeds be insufficient to extinguish the outstanding debts.
The foreclosure proceedings were conducted by the Jumpp Company, Inc., real estate appraisers and auctioneers. During the weeks beginning March 19, March 26, and April 2, 1993, a notice entitled “Mortgagee’s Sale of Real Estate” was published in the Lowell Sun. Promotional advertising appeared in the Boston Herald on April 4, 1993, and in the Lowell Sun on April 4, 7, and 11, 1993.
The foreclosure sales were held on April 16, 1993 at 10:00 a.m. and 11:00 a.m. There were seven qualified bidders present at each sale. The property located at 779-781 Westford Street sold for $41,000.00, and the property located at 199-201 Wilder Street sold for $44,000.00.
As of May 18, 1993, the outstanding balance due and payable on the $158,000.00 note was $120,103.24, with interest accruing at the rate of $25.99 per diem. As of May 18, 1993, the outstanding balance due and payable on the $205,000.00 note was $165,537.75, with interest accruing at the rate of $35.89 per diem. The amounts due on the additional promissory notes were $12,305.76 and $15,511.64.
DISCUSSION
I. Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ. P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
II. The Promissory Notes
Shawmut is entitled to summary judgment on its claims under the promissory notes. It has produced verified copies of all four promissory notes, and there is no dispute that Duffy and Doucette executed the notes and defaulted on same. Having produced the notes, and established the genuineness of the signatures, Shawmut cast on Duffy and Doucette the burden of establishing a defense. See G.L. c. 106, §3-307(2); Coupounas v. Madden, 401 Mass. 125, 129 (1987); Guinness Import Co. v. DeStefano, 25 Mass.App.Ct. 366 (1988). To defeat summary judgment, Duffy and Doucette must, by proper affidavits or otherwise, set forth specific facts showing that there is a genuine issue for trial. Guinness, supra at 367. See Mass.R.Civ. P. 56(c). They have not done so.[5]
Duffy and Doucette agree that as a general rule, a fiduciary relationship does not arise out of a lender-borrower relationship. Nevertheless, they allege that Shawmut breached an underlying duty of good faith in loaning them more money in January of 1992. See Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991) (there exists an implied covenant of good faith and fair dealing in every contract); Fortune v. National Cash Register Co., 373 Mass. 96, 104 (1977); Shawmut Bank. N.A. v. Wayman, 34 Mass.App.Ct. 20, 25 (1993); G.L. c. 106, §1-203. They assert that the values of the mortgaged properties were much higher in January of 1992 than in April of 1993, and that had Shawmut foreclosed on them in 1992 rather than loaning the defendants additional funds, the resulting deficiencies would not be so large. They also allege that Shawmut knew in January of 1992 that they would not be able to repay the first mortgage loans unless Shawmut lowered the interest rates to between 4V2% and 5%.
Defendants’ “good faith” defense must fail. There is simply no evidence in the record that Shawmut was less than honest in its dealings with defendants or that it purposefully attempted to impair their rights, nor have defendants alluded to any such evidence. See Shawmut Bank. N.A., supra at 25 (in addressing guarantor’s claim of breach of covenant of good faith and fair dealing, court stated that the duty requires that bank be honest in its dealings with guarantor and *352 not purposefully injure her right to obtain the benefits of the contract).
III. The Foreclosure Sale
A foreclosing mortgagee is required to act with reasonable diligence to protect the interests of the mortgager. Williams v. Resolution GGF OY, 417 Mass. 377,383 (1994); Seppala & Aho Constr. Co. v. Peterson, 373 Mass. 316, 320 (1977), and cases cited. See Pemstein v. Stimpson, 36 Mass.App.Ct. 283, 286-87, rev. denied, 418 Mass. 1103 (1994). “[T]his duty requires effort and attention by the'mortgagee to conduct the sale of the property fairly and in good faith through the observance of the procedural requirements of the statutes and the mortgage.” Seppala, supra at 326.
Defendants’ only objection to the foreclosure sale is that Shawmut sold the properties for amounts far below their fair market value. They allege that in January of 1992, 779-781 Westford Street had been appraised for $150,000.00, and that 199-201 Wilder Street had been appraised for $155,000.00. In that case, the Westford and Wilder Street properties sold for 27% and 28% of their respective values. Although defendants do not so state, the crux of their argument must be that the Shawmut did not act with reasonable diligence to protect their interest. See Williams, supra at 383.
Despite defendants’ reliance on the aforementioned appraisals, they have failed to attach authenticated copies of the appraisals to their opposition. In the absence of such evidence, defendants’ argument is insupportable.[6] Moreover, even if defendants had attached copies of the appraisals, those appraisals alone would not be competent evidence of the respective values of the properties two years later. Finally, even assuming that the fair market value of the properties was consistent with defendants’ appraisals, their argument against summary judgment still fails. A low sale price for foreclosed real estate does not, by itself, indicate either bad faith or lack of reasonable diligence. Pemstein, supra at 287; Sher v. South Nat’l Bank, 360 Mass. 400, 402 (1971); Andover Savings Bank v. Basha, 326 Mass. 725, 727 (1951); Union Market National Bank v. Derderian, 318 Mass. 578, 582 (1945); Deslauries v. Shea, 300 Mass. 30, 34-35 (1938); Pemstein, supra at 287. The alleged bad faith or lack of reasonable diligence must be “of an active and conspicuous character.” Pemstein, supra at 287. See Sandler v. Silk, 292 Mass. 493, 497 (1935); Bon v. Graves, 216 Mass. 440, 446-447 (1914); Clark v. Simmons, 150 Mass. 357, 361 (1890). There is no evidence of such bad faith or lack of diligence in this case.
While there may be rare instances where a sale price is so extraordinarily low as to constitute, in and of itself, evidence from which a court may infer bad faith, see Chartrand v. Newton Trust Co., 296 Mass. 317, 320 (1936), the current case does not present one of those instances.[7] “It is a notorious fact that, when land is sold by auction under a power contained in a mortgage, it seldom, if ever, brings a price which reaches its real value.” Seppala, supra at 316, quoting Austin v. Hatch, 159 Mass. 198, 199 (1893). See also BFP v. Resolution Trust Corp., 114 S.Ct. 1757, 1762, 128 L.Ed.2d 556, 565, reh’g denied, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994) (“An appraiser’s reconstruction of ‘fair market value’ could show what similar property would be worth if it did not have to be sold within the time and manner strictures of state prescribed foreclosure. But property that must be sold within those strictures is simply worth less.”) (Emphasis in original).
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiff Shawmut Bank, N.A.’s Motion for Summary Judgment be ALLOWED. The issue of damages shall be the subject of a separate hearing.

The notes were originally executed on behalf of First Bank, a predecessor of Shawmut. However, for the sake of clarity, the court will refer only to Shawmut.

The record does not reveal the exact date of defendants’ default.

Shawmut apparently made an additional concession from its original bargaining position, although the precise nature of that concession is not clearly set forth.

Defendants’ defense consists only of a five page memorandum of law, unsupported by affidavits or other admissible evidence.

In opposition, Shawmut has alleged that at the time of the foreclosure sales, the Westford and Wilder Street properties each had an appraised value of $61,000.00. If true, the properties sold for 67% and 72% of their respective appraised values. However, like defendants, Shawmut has not attached copies of the appraisals to its moving papers, and its unsupported allegations do not carry any evidentiary weight.

Neither did Chartrand.