ASA S. MITCHELL & another *vs.* MARSHALL G. WRIGHT & others.

Suffolk.    November 14, 1919. — January 9, 1920.

Present: RUGG, C. J., DE COURCY, PIERCE, & JENNEY, JJ.

*Mortgage,* Of real estate. *Attorney at Law. Equity Jurisdiction,* For accounting by mortgagee.

In a suit in equity by a woman against one, who was in the business of a money lender in the State of Maine and who also was a member of the bar both of that State and of this Commonwealth but was not engaged in the general practice of law, for an accounting as to receipts and disbursements relating to property mortgaged by the plaintiff at the defendant's request to the defendant's wife

and others to secure the payment of notes given for loans made by the defendant, one of the mortgages having been foreclosed by sale and the property having been conveyed to the defendant's wife in his behalf, the plaintiff contended only that the mortgages were held under agreements that there should be no proceedings in foreclosure of them and that they should remain in abeyance until the estate of the father of the plaintiff, from whom she had received the estate mortgaged, should be settled. The suit was referred to a master. The master found, without a report of the evidence, that the agreements relied on by the plaintiff were not made as to the mortgage which was foreclosed, and the facts found by him as to the other mortgages were inconsistent with the existence of such an agreement. *Held*, that, the plaintiff by the foreclosure having lost her right to redeem, the suit must be dismissed.

In the suit above described, it appeared that the aggregate amount of the principal of the notes secured by the mortgages was $2,495, that the mortgage which was foreclosed was to secure the payment of a note of $65 and that it was foreclosed because of default in the payment of the principal of the note. *Held*, that the right to foreclose the mortgage was not impaired by the smallness of the principal sum then overdue and unpaid.

In the suit described above, it also appeared that, after the foreclosure by sale and conveyance to the defendant's wife, she entered to foreclose an earlier mortgage. *Held*, that such entry did not open the foreclosure of the later mortgage nor impair the validity of those foreclosure proceedings.

BILL IN EQUITY, filed in the Supreme Judicial Court on July 23, 1915, and afterwards amended, by Asa S. Mitchell and Mary C. Ireland, against Marshall G. and Ellen E. Wright, Wilbur F. Dresser, Fred J. Wright and Florence M. Patrician, alleging that each of the plaintiffs was the owner of a one third undivided interest in eleven parcels of real estate in Boston, Chelsea and Halifax, that the defendants were the holders of mortgages thereon, executed by the plaintiffs at the request of the defendants as security for money loaned by the defendant Marshall G. Wright when acting as the plaintiffs' attorney, that all the defendants had acted in the interest of Marshall G. Wright and as his employees or agents in the transactions, that the defendants had agreed not to foreclose the mortgages, that the plaintiffs had asked for accountings from the defendants Marshall G. and Ellen E. Wright, and that they had refused to render an accounting. The prayers of the bill as amended were for an accounting by Marshall G. and Ellen E. Wright, a payment to the plaintiffs of any balance found due and a discharge of the mortgages.

The defendant Dresser neither appeared nor answered. The defendants Fred J. Wright and Florence M. Patrician appeared by an attorney but did not file any answer.

The defendants Marshall G. and Ellen E. Wright filed a plea in bar. The plea was heard by *Loring,* J., by whose order an interlocutory decree was entered dismissing the bill "in so far as it sets up any claims or complaint of said Asa S. Mitchell . . . against Marshall G. Wright and Ellen E. Wright." The plaintiffs appealed from that decree.

The defendants Marshall G. and Ellen E. Wright then filed a joint answer, issue was joined thereon, and the suit was referred to a master who filed a report, and, upon recommittal, a supplemental report. In his report the master stated that the suit was tried before him solely on the issues presented by the pleadings of Mary C. Ireland, plaintiff, and Marshall G. and Ellen E. Wright, defendants, and that his findings were confined to those issues.

The plaintiff Ireland hereinafter will be called the plaintiff, and the defendants Marshall G. and Ellen E. Wright, the defendants.

The evidence before the master was not reported by him. From his findings it appeared that the mortgages to which the suit related were as follows: (1) To Rollin H. Allen, dated September 28, 1911, assigned to Ellen E. Wright on January 26, 1912; (2) to Ellen E. Wright, dated November 29, 1911; (3) to Ellen E. Wright, dated December 20, 1911; (4) to Ellen E. Wright, dated January 30, 1912; (5) to Ellen E. Wright, dated March 23, 1912; (6) to Florence A. Oakley, dated July 6, 1912; (7) to Wilbur F. Dresser, dated December 31, 1912.

Findings as to the Oakley mortgage and its foreclosure were in substance as follows: The plaintiff had applied to Marshall G. Wright for an additional loan. He refused to grant her request, but suggested that he would communicate with Florence A. Oakley, and the loan, amounting to $65, finally was made by Wright, he carrying through the transaction in the name of Florence A. Oakley for his own convenience. The Oakley mortgage was foreclosed in September, 1913, primarily for the benefit of Marshall G. Wright. At the time of the execution of this mortgage, he had warned the plaintiff that it would have to be paid at maturity. The principal was more than eight months overdue, and whatever may have been the understanding of the parties apart from, or in addition to, the written instruments which represented the prior transactions, to the effect that the loans were to

be eventually paid from the proceeds of the plaintiff's share in the estate, no such understanding or agreement obtained in regard to the Oakley mortgage.

"It is true that the note for which this mortgage was given as security was for the sum of $65 only, but however small the amount, Mrs. Ireland understood, and by accepting the loan agreed, that the principal should be paid according to the terms of the note and mortgage. This she failed to do, and I am obliged to find and rule as I do, that by the foreclosure of the Oakley mortgage, she lost whatever rights she might otherwise have had to redeem from the Wright and Allen mortgages."

Findings of the master as to the Dresser mortgage were in substance as follows:

The mortgage, dated December 31, 1912, was given to secure a note of the same date for $400, payable to the order of Wilbur F. Dresser in eight months from date, with interest semiannually at the rate of six per cent per annum, and interest on all overdue interest at the same rate. On June 27, 1913, before any interest had become due, Dresser prepared, or caused to be prepared, a notice of intention to foreclose said mortgage. "This notice recites that in pursuance of the power of sale contained in the mortgage in question, and for breach of the conditions contained in said mortgage, and for the purpose of foreclosing the same, will be sold at public auction on Thursday, the 31st day of July, 1913, at 1:30 o'clock in the afternoon, at the office of George Libby, No. 53 State Street, Room 306, Boston, Mass., the property described." The notice is dated Portland, June 27, 1913. It was published in the "Boston Evening Record" on July 2, 9 and 16, 1913, and in the "Chelsea Evening Record," July 3, 10 and 17, 1913.

The plaintiff knew that Dresser contemplated beginning foreclosure proceedings, and she assented to his so doing. The sale was adjourned twice, and on August 7, 1913, the property was sold at public auction by a duly licensed auctioneer. It was bid in by Dresser for the sum of $400, and he executed a deed to himself dated August 11, 1913. The deed was acknowledged but never was recorded, and remained in the possession of Dresser until he delivered it to counsel for the plaintiff in this cause, who produced it at the hearings. After the execution of this deed and its retention by Dresser, he did nothing further toward exercising

any control over the property therein described. No fraud was practised by Dresser on the plaintiff either before, or at the time of, or subsequent to, the foreclosure. The formalities relating to foreclosure proceedings were complied with, unless as a matter of law the making out and dating of the notice of intention to foreclose before there had been any breach of the mortgage, constituted a vital defect in the foreclosure proceedings. At the time that the first publication of the notice of intention to foreclose was published there was a breach of the conditions of the mortgage by a failure to pay the interest, amounting to $12, which then was due. Dresser at that time had not demanded any payment of interest. On or about August 16, after the sale, Dresser did demand and receive $10 on account of interest. There was no statutory entry made by Dresser, or any one in his behalf, to take possession of the property under the mortgage.

The master found " (1) that the conditions of both the Ireland-Dresser mortgage and the Massachusetts laws relating to foreclosure proceedings were duly complied with by the mortgagee in foreclosing the Ireland-Dresser mortgage; (2) that the complainant Ireland was in no way misled or prejudiced because the foreclosure notice advertising the foreclosure of the Ireland-Dresser mortgage was dated prior to the due date of the interest on the note secured by said mortgage."

The plaintiff made payments of interest to Dresser after the foreclosure of his mortgage. As to these, the master found: "At the time that these payments of interest were made to Dresser, the plaintiff was negotiating with both Wright and Dresser, who were also negotiating with each other, with the view to having all of the mortgages held by one person. Dresser claims that Wright agreed to take over his mortgage, but there is no evidence to corroborate his statement. Wright and the plaintiff both testify that Dresser agreed to take over the Wright mortgages, and there is documentary evidence to support this testimony. It is reasonable to assume that the payments of interest were made with this end in view; in other words, that Dresser did not intend to waive his foreclosure. The equity, if such it can be called, was bid in by him for $400, which was the face of the note. Mrs. Ireland was liable on the note for the interest. He could have brought suit to recover this interest."

On February 13, 1917, the defendant Ellen E. Wright filed a bill in equity in Cumberland County in the State of Maine against Wilbur F. Dresser under the Rev. Sts. of Maine, 1916, c. 78, § 37, to compel the defendant to record his evidence of title under foreclosure. Dresser answered on February 19, 1917, waiving "all right and title under said foreclosure," and asserting "that if there was any foreclosure, he hereby waives the same and simply claims a lien on the described property by virtue of the mortgage above mentioned on which he has received sundry payments of interest since said alleged foreclosure." The attorney for Mrs. Wright in these proceedings was Robert T. Whitehouse, Esquire. He appeared as a witness before the master and testified. The master found that "the petition, addressed to Hon. George E. Bird, Justice of the Supreme Judicial Court of the State of Maine, was dismissed because Mr. Justice Bird was of the opinion that inasmuch as the property described in the deed was located in Massachusetts, the Maine statute had no extraterritorial force or effect, and was applicable only to the recording of instruments relating to real estate within the State of Maine."

The master also found that there had been no waiver by Dresser of the foreclosure of his mortgage.

Other material findings by the master are described in the opinion.

Objections and exceptions by the plaintiff to the master's report raised the questions, whether the master was right in his findings as to the relations between the plaintiff and the defendant Marshall G. Wright, as to the effect of the foreclosure of the Oakley mortgage, as to the effect of the foreclosure of the Dresser mortgage and the alleged waiver by Dresser, and as to the plaintiff's laches.

The suit was heard by *Braley*, J., upon the exceptions to both reports and by his order an interlocutory decree was entered overruling the exceptions to the report and confirming the report; and a final decree was entered dismissing the suit "as against the defendants Marshall G. Wright and Ellen E. Wright without costs to said defendants." The plaintiffs appealed.

*J. H. Duffy*, for the plaintiffs.

*F. Killam*, (*M. G. Wright* of Maine, with him,) for the defendants.

JENNEY, J. As the only questions now involved relate to the right of Mary C. Ireland to maintain this suit, she is herein called the plaintiff. She was the owner as tenant in common of an undivided third interest in several parcels of land situated in Boston. The only question to be determined is, to what remedy, if any, the plaintiff is entitled as against Marshall G. Wright and his wife, Ellen E.

All of these parties reside in Portland, Maine. Mr. Wright was a member of the bars of Massachusetts and Maine, but had never actively practised his profession. He was in business in Portland as a money lender, making loans at high rates of interest, and the plaintiff went to him as an entire stranger, without any solicitation on his part and without any knowledge that he was an attorney, solely for the purpose of borrowing money. It is not necessary to recapitulate in detail the various loans made; the transactions were numerous, the rates of interest were high, and large bonuses were charged. The loans were made in Maine, and the master found that they were legal under the laws of that State. As a result there were outstanding five mortgages all given by the plaintiff and all running to Mrs. Wright, but in reality the property of her husband. A sixth mortgage was given to Florence A. Oakley to secure payment of $65, and this mortgage was held by her for the benefit of Mr. Wright. A seventh mortgage, later in date than those referred to, was given by the plaintiff to Wilbur F. Dresser. These mortgages aggregated $2,495. There is no finding as to the value of the plaintiff's interest in the property. The master finds, and the facts found fully warrant his conclusion, that the plaintiff made "hard and perhaps improvident bargains, but she went into them with her eyes open at a time when she needed, or thought she needed, money, and was willing to pay exorbitant prices for the same. There was no misrepresentation on the part of Mr. Wright."

The plaintiff admits the execution of these mortgages and contends that she is entitled to relief (1) because these mortgages were held under agreements that all debts secured thereby should remain in abeyance until the settlement of the estate of her father, from whom she inherited her undivided interest in the mortgaged property, and until money was received from her undivided share in the mortgaged property, and also because the mortgages were

held under a further agreement that there should be no foreclosure proceedings; (2) because the mortgages have been paid by the receipt of net income from the property in excess of the indebtedness secured thereby; and (3) because she is entitled to redeem from the mortgages, in case they have not been paid, and to an accounting incidental to such redemption.

While the plaintiff alleges that Mr. Wright acted as her attorney and that she relied wholly on his advice and counsel, she does not aver that the mortgages were obtained by fraud or by an abuse of the confidential relations of attorney and client existing, as she contends between Mr. Wright and herself, or that said mortgages were not valid liens on her interest in the property, subject however to the agreements above recited.

The plaintiff's first and second contentions cannot avail. Assuming that evidence was admissible so to vary the terms of the mortgages, the master did not find that any agreements of the character stated had been made, and his findings are absolutely inconsistent with their existence. Moreover, he expressly finds that "no such understanding or agreement obtained in regard to the" mortgage hereinafter described and referred to as the Oakley mortgage. He also found that the mortgages had not been paid by the receipt of income and that no income was received from the property until after the foreclosure of the Oakley mortgage. It is found in much detail that the mortgages were valid mortgages, not obtained by fraud or by an abuse of the relations between attorney and client; that they were not given as the result of solicitation on the part of the Wrights, or procured with any sinister motive or intent ultimately to deprive the plaintiff of her property by foreclosure or otherwise. The master finds that Mr. Wright did not act as the plaintiff's attorney until October 6, 1911. Previous to that date the plaintiff had given three mortgages to Mrs. Wright. It is true that the first mortgage was originally given to one Allen and had not then been assigned to Mrs. Wright, but the assignment was taken at the solicitation of the plaintiff. The relation between the plaintiff and Mr. Wright was primarily that of money lender and borrower in needy circumstances. He was not engaged in the general practice of law and the services rendered by him all related to the protection of the property included in the mortgages and were, so far as the record shows, proper for that purpose. Assuming

that the questions involved in this relationship are open, the findings negative the concealment of any material fact influencing the plaintiff's action. While transactions between attorney and client must be scrutinized with the greatest care, and while it must appear that they are "fairly and honestly consummated," this record presents no abuse of the relation. While we cannot approve business dealings between attorney and client which do or may create adverse interests between them, on the facts found, the plaintiff is not entitled to relief because of this relation. *Manheim* v. *Woods,* 213 Mass. 537. *Rolikatis* v. *Lovett,* 213 Mass. 545. *Fardy* v. *Buckley,* 231 Mass. 377.

As the mortgages constituted valid liens on the plaintiff's property, the relief to which she at the most is entitled is an accounting. But the accounting sought is simply that which is incidental to redemption from the mortgages. The bill contains no allegations appropriate for relief under R. L. c. 159, § 3, cl. 6. See *Lee* v. *Fisk,* 222 Mass. 424; *Lovejoy* v. *Bailey,* 214 Mass. 134, 150. The plaintiff, however, can maintain this bill for an accounting incidental to such redemption unless she has lost her interest in the property. The Wrights contend that she has lost such interest by reason of the foreclosures of the Dresser and Oakley mortgages. The Oakley mortgage was duly foreclosed on September 10, 1913, and Mrs. Wright was the purchaser at the sale under the power contained in the mortgage, taking title in her own name but for the benefit of her husband, and the deed under the power was duly made and delivered to her. The right to foreclose this mortgage was not impaired by reason of the smallness of the principal sum then overdue and unpaid. The legal exercise of this power cut off all right of redemption from prior mortgages. This foreclosure was not opened by the entry to foreclose made by Mrs. Wright in April of the next year on one of the earlier mortgages. Such entry did not impair the validity of the sale already made under the power contained in a subsequent mortgage, although the parties to both mortgages were the same. Its only possible effect was by way of further assurance of title, or as the assertion of a right paramount to intervening incumbrances, if any.

Inasmuch as the plaintiff has lost her right of redemption by the foreclosure of the Oakley mortgage, it is unnecessary to consider the questions involved in the foreclosure of the Dresser mort-

gage, and the defence of laches as raised by the Wrights is also immaterial.

The plaintiff's exceptions to the master's report have all been examined with care and such of them as are essential to the decision of the case have already been considered. The other exceptions relate to questions now immaterial, and to findings of fact which cannot be reversed because made on evidence not reported.

The decrees from which the plaintiff Ireland has appealed must be affirmed.

*So ordered.*