Sherman, P.J.
This is an action to recover use and occupancy charges, eviction expenses and unpaid utility bills after the foreclosure and sale of commercial premises and the eviction of the former owner/occupant. Judgment was entered for the plaintiff, and the defendant filed this Dist./Mun. Cts. R. A. D. A, Rule 8C appeal.
The record indicates that from 1975 to 1990, defendant George Tarvezian (‘Tarvezian”), individually and through numerous associations and trusts,[1] owned property at 26-32 Locust Street in Belmont. The property consisted of two commercial buildings, a small garage and the parcel of land on which they were located. Although the surrounding area was zoned for residential use, the buildings in question were properly utilized for commercial purposes as a non-conforming use valid under Belmont’s Zoning By-laws. Between 1975 and 1980, Tarvezian leased the premises to various commercial tenants for manufacturing, research and development, product assembly, engineering and related office and storage space. From 1980 until his eviction, Tarvezian used both buildings for his own office and storage purposes.
*173 Tarvezian defaulted on a mortgage note to Coolidge Bank & Trust Co., the Bank foreclosed in 1990, and the property was acquired by Sumter Fifteen Corp. (“Sumter”). Upon Tarvezian’s refusal to vacate the premises, Sumter commenced District Court summary process proceedings in 1991 and obtained a judgment for possession on January 30,1992. Tarvezian appealed to the Superior Court, and the District Court ordered him to pay $1,500.00 per month for use and occupancy of the premises during the pendency of his appeals. A Superior Court judgment for possession in favor of Sumter was entered on January 30,1993. The Appeals Court affirmed that judgment on August 12,1994. A writ of execution for possession was issued on October 12,1994, and Tarvezian was finally removed from the property by Deputy Sheriffs on October 13,1994.
On August 23,1993, during the appeals process, Mark Moore Homes, Inc. (“the plaintiff’) purchased the property from Sumter. Tarvezian failed to make any payments for use and occupancy from the transfer of the property on August 23,1993 to the date of his eviction on October 13, 1994. The plaintiff filed this suit in November, 1994 to recover $109,554.24 for use and occupancy, $4,268.43 in itemized eviction expenses and $73.63 for unpaid water bills.
Tarvezian denied any liability for use and occupancy charges on the grounds that the property had no commercial market value because the nonconforming use was terminated two years after the 1980 departure of his last commercial tenant. The trial court’s written findings of fact included the following:
Despite the foreclosure, Tarvezian continued to occupy the buildings on the property. He refused to pay rent to anyone. Tarvezian used both buildings for storage. The area where the property is located is zoned for residential use. However, Defendant validly used the two buildings for commercial purposes as a nonconforming use. Such nonconforming use would have been forfeited had the buildings remained vacant for more than two years. During Tarvezian’s continued occupancy of the two buildings, he kept alive the nonconforming use by his use of both the buildings for storage.
Tarvezian also counterclaimed, inter alia, for "interference with quiet possession” based on the plaintiff’s trespass onto the property. The court found:
On August 18,1994, after judgment in the summary process case but before execution issued, plaintiff attempted to take possession of the properly. Plaintiff changed the locks to the property. During the brief period of its entry on the property, plaintiff did not disturb the property at all. One day later, defendant regained control of the property and changed the locks again.
Plaintiff’s entry on the property was improper since execution had not issued. Defendant is entitled to recover for the value of one day’s occupancy ($300) and the cost of changing locks ($330). Defendants have no proven claims for emotional distress or invasion of privacy.
The court assessed damages against Tarvezian in the amount of $22,500.00 for fifteen months’ use and occupancy plus $73.71 for unpaid water bills, set-off the $630.00 awarded to Tarvezian on his counterclaim, and ordered judgment for the plaintiff in the net amount of $21,843.71.
1. Tarvezian’s appeal consists solely of a charge of error in specific findings of fact by the trial court; namely, that the use and occupancy value of the property was $1,500.00 per month, and that Tarvezian had no proven claim for invasion of privacy or infliction of emotional distress. He argues that the court’s findings were not warranted as a matter of law by the “undisputed” evidence adduced at trial. *174 Tarvezian effectively waved, however, any appellate consideration of the sufficiency of the evidence to have permitted or required findings in his favor by failing to file either Mass. R. Civ. R, Rule 64A requests for rulings of law, Worcester County Nat’l Bank v. Brogna, 386 Mass. 1002, 1002-1003 (1982); Ducker v. Ducker, 1997 Mass. App. Div. 147, 148, or a Mass. R. Civ. P., Rule 41(b) (2) motion for involuntary dismissal of the plaintiff’s claim. See Espinola v. Riley’s Liquors, Inc., 1994 Mass. App. Div. 96. It should be too elementary to require restatement here that appellate review in District Court non-jury civil proceedings is limited to issues of law properly raised in the trial court and preserved for appeal by the filing of requests for rulings. Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 95-96; Cooperstein v. Turner Bros. Construc., Inc., 1992 Mass. App. Div. 249, 251.
Where, as in the instant case, a trial judge elects to make voluntary written findings of fact not required in a District Court non-jury action, a narrow window of appellate opportunity is created for a party who has failed to preserve his right to appellate review. Consideration may be given on appeal to the question of whether the trial court’s findings of fact are so devoid of support in the record that they are “clearly erroneous.” Kendall v. Selvaggio, 413 Mass. 619, 620-621 (1992); Waters v. Min Ltd., 412 Mass. 64, 66 (1992). In undertaking such review, however, an appellate court does not weigh anew evidence in support of the appellant’s position, as Tarvezian urges here. Lundgren v. Gray, 41 Mass. App. Ct. 451, 457 (1996). The trial court’s findings of fact are accorded the customary appellate deference, Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of Dept. of Men. Retard., 424 Mass. 430, 452 (1997); Starr v. Fordham, 420 Mass. 178, 186 (1995), and the burden of proof is on the appellant, Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 509 (1997); Shear v. Gabovitch, 43 Mass. App. Ct. 650, 652 (1997), to establish that the court’s findings cannot be substantiated “on any reasonable view of the evidence, including all rational inferences of which it was susceptible.” First Penn. Mortg. Trust v. Dorchester Sav. Bank, 395 Mass. 614, 624 (1985), quoting from T.L. Edwards, Inc. v. Fields, 371 Mass. 895, 896 (1976).[2]
2. Tarvezian has clearly failed to satisfy such burden. Turning first to the nonconforming use question, it was undisputed that the property was validly used for commercial purposes under Belmont’s Zoning By-laws. Tarvezian introduced no evidence which would have required a finding in his favor that the nonconforming use was exclusively restricted to research and development as opposed to office, storage or other commercial uses, and that such limited nonconforming use was discontinued[3] upon the removal of all research and development equipment by his last tenant in 1980. No ruling, decision or record of the Planning Board, Building Department or other Town agency identifying or defining the nonconforming use, or formally discontinuing it, was admitted into evidence. Index cards from the Tax Assessor’s Office characterizing the property’s actual use at a particular point in *175 time as research and development do not purport to define the nature or scope of the commercial nonconforming use and were thus inconclusive. More significantly, it was largely undisputed at trial that Tarvezian maintained offices on the property for, inter alia, the management and operation of his other rental properties and utilized both buildings for storage, all without interruption for a period of at least twelve years up to the date of his eviction. Such evidence warranted the court’s finding that Tarvezian’s continued occupation and use of the property for his own business purposes preserved the commercial nonconforming use.
Such uninterrupted use, coupled with Tarvezian’s relentless and exhaustive efforts to maintain possession right up to the point of forcible eviction, belie his related argument that the property was worthless, and that the absence of any commercial or market value precluded any award of damages for use and occupancy of the premises. The trial judge was free to balance evidence that the buildings were damaged and in an unrepaired “shell condition” without heat, electricity or elevator service against both Tarvezian’s own use of the property and expert testimony as to a current market rental value of approximately $7,800.00 per month.[4] While the customary measure of use and occupancy damages is the fair market value of the property, Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 502 (1997), the dispositive question is what the use and occupation was actually and “reasonably worth.” Lowell Housing Auth. v. Save-More Furniture Stores, Inc., 346 Mass. 426, 431 (1963); C. Healy Assoc., Inc. v. Concord Oil Co., 1992 Mass. App. Div. 22, 23. In making that determination, all relevant factors, including the condition of the premises and their use by the tenant at sufferance as well as market value, may be considered by the trial judge as fact-finder. Viewing the record in its entirety, the trial court’s assessment of $1,500 per month for use and occupancy herein was amply supported by the evidence introduced at trial.
3. No specific counterclaim for invasion of privacy or infliction of emotional distress, negligent or intentional, was filed by Tarvezian, and no request for ruling on such claims was submitted. With respect to invasion of privacy, it is sufficient to. note that G.L.C. 214, §1B vests the Superior Court with exclusive jurisdiction in equity over such claims.[5] Tarvezian has wisely avoided any argument that he had a nonstatutory or common law right of recovery which could be pursed in the District Court. See Tropeano v. Atlantic Monthly Co., 379 Mass. 745, 748 n. 5 (1980); Boston v. Ditson, 4 Mass. App. Ct. 323, 330 n. 8 (1976). Thus the trial court lacked the requisite jurisdiction to adjudicate Tarvezian’s claim.[6]
4. Assuming arguendo that a claim for emotional distress caused by a single act of trespass is actionable, compare Harrison v. Textron, Inc., 367 Mass. 540, 556 n. 13 (1975) (damages for emotion distress accompanying independent physical injury resulting from a continuing trespass or nuisance are recoverable), Tarve-zian failed to prove such claim in this case.
Tarvezian testified only that in consequence of the plaintiff’s unlawful entry onto the property, he experienced anxiety, fear, distress, sweating and lost sleep. *176 Such evidence was insufficient to establish negligent infliction of emotional distress, which requires proof of “physical harm ... caused by the emotional distress ... [and] manifested by objective symptomatology and substantiated by expert medical testimony.” Payton v. Abbott Labs, 386 Mass. 540, 556 (1982). Further, in the absence of expert testimony, the trial judge could have properly determined thatTarvezian’s distress was not so severe as to be beyond that which “a reasonable [person] could endure” so as to support a finding of intentional infliction of emotional distress. Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). The latter may be found only where a party, without privilege to do so and by extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to the plaintiff. Id. at 144-145. Nor was the trial judge required to find that the plaintiff’s brief and peaceful, albeit mistaken, entry onto the property in the company of a police officer constituted action so extreme and outrageous that it was beyond “all possible bounds of decency and utterly intolerable in a civilized community.” Id. at 145.
Appeal dismissed.
So ordered.

 In addition to George Tarvezian, Jr., individually, the named defendants in this action included Garv Realty Trust, Brigant Realty Trust, Galtar Realty Trust, and Tarvezian as trustee of the same, as well as Tarvezian Associates , Tarvezian Group, G.K.T. Realties, Azy Investments, Garv Management, Garv Properties and Beltwater Property Management.

 Of course, the “clearly erroneous” standard does not protect either findings of fact or conclusions of law which are predicated on incorrect legal standards. Williams v. Resolution GGF OY, 417 Mass. 377, 392 (1994). Moreover, voluntary rulings or conclusions of law set forth in a trial judge’s memorandum of decision are scrutinized without deference and subject to ordinary appellate review. Kendall v. Kendall, 426 Mass. 238, 242 (1997); Marlow v. New Bedford, 369 Mass. 501, 508 (1976).

 Section 1.5.3 of the Zoning By-Laws of Belmont provides: “A nonconforming use shall be considered discontinued when the premises have been devoted to a conforming use, or when the premises have been vacant for a period of two years or when the characteristic equipment and the furnishings of the nonconforming use have been removed from the premises and have not been replaced by similar equipment within two years.”

 There was testimony as to a fair market value of $3.00 per sq. ft. per year for the property’s commercial storage space (18,792 sq. feet) and $20.00 per sq. ft. per year for commercial office space (1,976 sq. feet).

 Section IB states; “A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages.”

 To the extent that Johnson v. Two Guys-Mass., Inc., 1981 Mass. App. Div. 237 (West. Dist.), upon which Tarvezian relies, sets forth a different ruling, we respectfully decline to follow it.